In the matter of the estate of JENNIE BANVARD, deceased.

[Decided February 27th, 1914.]

1. It was immaterial that a petition for the probate of a will did not mention the contestants amongst the heirs and next of kin, although their existence was known, as the surrogate is not required to give notice of the application to the heirs and next of kin, who must protect their own interests, and may still appeal to the orphans court after the ten days for filing caveats.

2. The proponent of a will who occupied a position of trust and confidence towards the testatrix by reason of being her adviser and attorney, and who had opportunity to exert influence over testatrix, who lived in his house, had the burden of showing that he did not procure the making of the will under which he was the chief beneficiary by undue influence.

3. The preponderance of the evidence on the probate of a will *held* to show its due execution at the time and place alleged.

4. Evidence on the probate of a will *held* sufficient to overcome the presumption of undue influence on the part of the proponent, who occupied a position of trust and confidence towards the testatrix, with opportunity to exert influence over her, and was the chief beneficiary.

---

On appeal from the decision of orphans court.

*Mr. Edward Maxson* and *Mr. Richard E. Weldon,* for the appellant.

*Mr. Nathan A. Pendergast,* for the appellee.

LEWIS, VICE-ORDINARY.

This is an appeal taken from a decree of the Hudson county orphans court, admitting probate of an instrument offered for probate as the last will and testament of Jennie Banvard.

83 *N. J. Eq.*                    In re Banvard's Estate.

George C. L. Maes was named as the executor in said instrument and is the principal beneficiary thereunder.

The will is dated on October 25th, 1912; the decedent departed this life on November 20th, 1912; the instrument purporting to be her last will and testament was offered for probate on the 2d day of December, 1912; probate having been allowed by the surrogate, an appeal was taken to the orphans court of Hudson county, which upheld the probate of the will, and thereupon an appeal was taken to this court and argued on November 24th, 1913.

The opinion of the court below does not indicate the grounds upon which it arrived at the conclusion that the instrument offered should be offered for probate.

The testimony shows that the decedent was an elderly woman, somewhere between fifty and sixty years of age, who had lived in the house in which she died for a great many years, with the exception that when her mother died, which took place about a year and a half before the death of the decedent, she went to live in the house of George C. L. Maes, a neighbor of the family, who was a justice of the peace for Hudson county; she lived there until October 25th, 1912, the day on which the instrument purporting to be her last will and testament is dated. On the day on which the will is alleged to have been executed, decedent left the house of Maes and went to her own house, where she remained until her death.

The will was prepared by Maes, the chief beneficiary and executor of the will.

Jennie O'Neil, one of the heirs-at-law of the decedent, is the appellant.

The will is contested on the ground that execution of the will was not established by credible evidence, and on the ground that it was obtained by the exercise of undue influence on the testatrix.

The will was offered for probate by Maes, and much is attempted to be made out of the fact that, although the executor knew of the existence of the contestants, he did not mention them as next of kin or heirs-at-law in the petition for probate.

I do not see that there is very much force to that argument, however, as the surrogate is not required to notify the heirs· or next· of kin of the application for probate, and they are required to protect their own interests without any notification from the surrogate, and after the ten days have elapsed for the filing of caveats, they still have their right of appeal to the orphans court.

A clear *prima facie* case as to the execution of the will was established by the subscribing witnesses, and Maes was called to the witness-stand by the appellant and examined at considerable length, and it was shown that he occupied a position of trust and confidence towards the decedent, and that he had plenty of opportunity to exert influence over her mind, and there can be no doubt that the burden of establishing that he did not use undue influence over her in regard to the making of the will rests upon him.

The decedent and her mother both had great confidence in Maes, according to his own testimony, and that they consulted him in regard to their business affairs, and he says that he was all the attorney she (meaning the decedent) had, that he did not know of any other attorney that she ever consulted. He says that about a week or so before the will was executed the decedent had a conversation with him about it in his house, where she was living at that time. He says that the decedent was ill at that time, but that she claimed she was not ill but only felt lazy. He says she was an anæmic. Miss Wittpen, a nurse, came to see Miss Banvard, the decedent, at the house of Mr. Maes, but Maes testifies that he did not know that she was nursing Miss Banvard. On the day the will is alleged to have been executed, Miss Banvard returned to her own home, where Miss Wittpen was living with her, and the will is alleged to have been executed in Miss Banvard's own home on that day. The subscribing witnesses, one of whom is an architect and the other a surveyor, both swear to the due execution of the will at the home· of Miss Banvard on the day it was alleged ·to have been executed, and Maes corroborates them. Miss Wittpen, however, denies very ·emphatically that any of them were at the house of Miss Banvard at all on that day. Mr. Maes has desk room in

*83 N. J. Eq.* In re Banvard's Estate.

the office of the architect who has been mentioned as having been a subscribing witness, and the other subscribing witness, the surveyor, was frequently employed in the same office by the aforesaid architect. The preponderance of the evidence as to the due execution of the will at the time and place alleged is greatly in favor of the proponent of the will.

The remaining question as to whether the proponent has sustained the burden of proof that he did not exercise undue influence over the mind of the testatrix in regard to the making of the will is a much more serious question. He was the scrivener of the will; he was her trusted friend and adviser; he was the chief beneficiary, and he had ample opportunity to influence her. The law says that a witness to a will cannot take a legacy, and it would almost seem as if such a rule should apply to the present case and should be extended to such cases. However, such is not the law.

He denies that he attempted to influence her in any way in regard to the making of the will. He says that she told him a week before making the will that she was going to see what she had and that she would let him know what she wanted to do. A memorandum in Miss Banvard's handwriting was offered in evidence in corroboration, and he says that this is the memorandum from which she gave him the directions as to the provisions to be contained in her will, and he testified that at that time he made his own memorandum, which was also offered in evidence, and he explained the slight difference between his own memorandum and that of the testatrix.

The proofs in this case lead me to the conclusion that the appellee has sustained the burden of proof cast upon him, and that the paper-writing produced and executed by Jennie Banvard ought to be considered as her will and admitted to probate as such.

The decree below must be affirmed.